354   PEOPLE ex rel. RUSSELL v SUPRS. HERKIMER.

FOURTH DEPARTMENT, NOVEMBER TERM, 1887.

THE PEOPLE OF THE STATE OF NEW YORK EX
REL. SAMUEL T. RUSSELL, AS SUPERVISOR OF THE TOWN
OF GERMAN FLATS, APPELLANT, v. THE BOARD OF
SUPERVISORS OF THE COUNTY OF HERKIMER,
RESPONDENT.

*The expense of supporting indigent lunatics in State asylums is a town and not a county charge* — 1874, chap. 446, tit. 1, art. 1. sec. 14.

Upon the certificates or orders of the county judge of Herkimer county four luna-
tics in indigent circumstances, but not paupers, who were residents of and had
legal settlements in the town of German Flats, Herkimer county, were admitted
into the State Asylum for Lunatics, at Ovid or Utica.   The certificates or orders
were made in proceedings duly instituted for that purpose, and after the persons
named in them had been duly adjudged to be lunatics and in indigent circum-
stances.   The distinction between town and county poor is maintained in that
county, and there is a poor-house within the county which is supported as
required by law.

*Held*, that, under the provisions of section 14, article 1, title 1, chapter 446 of 1874,
the expense of supporting such indigent lunatics was to be paid by the town
of German Flats, where they had a legal settlement, and not by the county of
Herkimer.

That a claim made by the town that it could not be charged with the cost of sup
porting these persons, upon the ground that, although they had a legal settlement
in the town, they had not previously become chargeable to it, could not be sus-
tained, as, under the laws of 1874, no distinction was preserved between poverty
caused by insanity and that caused by other disease or misfortune.

APPEAL from a judgment entered in Herkimer county dismissing
an alternative writ of *mandamus*.

German Flats is one of the towns of Herkimer county.   Anna
Conklin, William Ryan, Mike McGuire and Hannah Dodge, were
residents of and had legal settlement in that town.   They were luna-
tics in indigent circumstances, but not paupers.   The persons named
were admitted into the State Asylum for Lunatics, at Ovid or Utica,
upon the certificates or orders of the county judge of Herkimer
county, made in proceedings duly instituted for that purpose, and
after they had been duly adjudged to be such lunatics, and in such
indigent circumstances.   The respondent, at its annual session for
the year 1885, decided and determined that the expense of support-
ing the lunatics named, was properly chargeable to the town of

German Flats, and added to the accounts which were to be levied upon the taxable property of that town the expense of their support. Similar action had been taken by the boards of supervisors of that county, for several years preceding the year 1885.

The distinction between town and county poor is maintained in that county; and there is a poor-house within the county which is supported as required by law. The relator applied for and obtained an alternative writ of *mandamus*, to compel the respondent to charge the expense of supporting these lunatics upon the county of Herkimer, instead of the town of German Flats, or to show cause, etc. Issue was joined by the respondent's return to such writ. The trial was had before the court without a jury. It resulted in a dismissal of the writ on the merits, with costs against the relator. From the judgment entered upon that decision the relator appealed.

*J. B. Rafter*, for the appellant.

*E. A. Brown*, for the respondent.

MARTIN, J.:

The single question presented, so far as the merits of this controversy are involved, is whether the expense of supporting indigent lunatics, not paupers, who are committed to the State asylums by a judge's order, made under the provisions of section 14, article 1, title 1, chapter 446, Laws of 1874, as amended, is to be paid by the town where they have a legal settlement, or whether it is to be paid by the county. Prior to 1874 the statute provided that if the judge certified that satisfactory proof had been adduced, showing the person's insanity, and the insufficiency of his estate to support him under the visitation of insanity, on the judge's certificate duly authenticated, such person was to be "admitted into the asylum, and supported there *at the expense of said county* until he shall be restored to soundness of mind, if effected in two years." (Laws 1842, chap. 135, § 26.) While that statute remained in force, it was held by the Supreme Court that the support of such indigent lunatics was a county charge and that the county could not charge the expense thereof to the town where the lunatics resided. (*People ex rel. v. Supervisors of Genesee*, 7 Hill, 171.) This decision seems to have been based upon the provisions of the Laws of 1842, above quoted, which it

was held expressly made the county liable, and that the town was not liable under another provision of that statute, because the lunatic was not by statute chargeable to the town.

In 1874 an act to revise and consolidate the statutes of the State relating to the care and custody of the insane was passed. (Laws 1874, chap. 446.) That section 14, article 1, title 1, chapter 446, Laws 1874, was intended as a substitute for and an amendment of section 26, chapter 135, Laws 1842 is manifest. Section 14 as amended by chapter 164, Laws 1880, provides when a person in indigent circumstances, not a pauper, becomes insane, application may be made to the county judge and he shall fully investigate the facts, both as to the indigence and the insanity of the alleged lunatic ; if the judge certifies that he is insane and indigent, it becomes his duty to cause a notice to be given to " one of the superintendents of the poor of the county chargeable with the expense of supporting such person in a State asylum," and then proceed to ascertain when such person became insane. The judge granting the order of indigence is required to file his papers and decision with the county clerk, and report the facts to the supervisors, " whose duty it shall be at their next annual meeting to raise the money requisite to meet the expenses of support of such indigent lunatic."

Section 16 of the same article contains the following provision : " The expense of sending any lunatic to a State asylum and of supporting him there, shall be defrayed by the county or town to which he may be chargeable." By section 31, title 3 of this act, which relates to the State Lunatic Asylum at Utica, it is provided that " the expenses of clothing and maintaining in the asylum a patient who has been received upon the order of any court or officer, shall be paid by the county from which he was sent to the asylum.    *    *    * Said county, however, shall have the right to require any individual, town, city or county, that is legally liable for the support of such patient, to reimburse the amount of said bills with interest from the day of paying the same." The same provision is made in regard to patients sent to the Willard Asylum for the insane located at Ovid. (§ 6, tit. 4, chap. 446, Laws of 1874.) This examination of these statutes discloses (1) that the provision of the Law of 1842, that a lunatic should be supported at the expense of the county was not re-enacted, and hence in effect repealed ; and (2) that the statute

PEOPLE ex rel. RUSSELL *v.* SUPRS. HERKIMER.   357

Fourth Department, November Term, 1887.

of 1874 expressly provides that the expense of sending *any* lunatic to or supporting him at the State asylums, shall be defrayed by the county or town to which he may be chargeable.

These changes in the statute have an important bearing upon the question under consideration. We think they indicate an intent to release the county from its absolute liability to support indigent lunatics, not paupers, who are confined in the asylums of the State and in counties where the distinction between town and county poor is maintained, to impose the burden of their support upon the town in which they have a legal settlement.

The relator, however, contends that the provisions of section 14, requiring notice to be given to the "superintendent of the poor of the county, chargeable with the expense of supporting such persons," and making it the duty of the board of supervisors at their next annual meeting "to raise the money requisite to meet the expenses of the support of such indigent lunatics," furnish potent evidence that such was not the intent of the statute. But when we remember that by this statute, all lunatics committed to the asylums are made chargeable to the county, in the first instance, and that the county may recover from any city, town, county or individual liable therefor, much of the force of this contention is dispelled. The provisions relied upon can well be construed as relating to the relations between the county and the asylum, and as not bearing upon the question whether the expense of such support is, in the end, to be defrayed by the town or by the county.

The relator also claims that these indigent lunatics, although they had a legal settlement in the town, had not previously become chargeable to it, and hence, the provisions of this statute do not apply. To whom were they chargeable? The county is absolved, and the expense of their support is to be defrayed by the town, if any, to which they may be chargeable. Until insane they had been chargeable to neither town nor county. When they became insane they became a public charge; they were to be supported at public expense. If other disease or misfortune had rendered them wholly or partially incapable of supporting themselves, the burden of their support must have fallen upon the town. They would then have become a charge upon the town. As the law now stands we perceive no sufficient reason for a distinction between poverty

caused by insanity and that caused by other disease or misfortune. We think it was not the intent of the law that such a distinction should be preserved, but that the purpose of the change in the statute of 1874, was to remove the distinction which had previously existed, as to the support of indigent lunatics. This construction seems to us to be in harmony not only with all the provisions of the statute of 1874, but with the other statutes of the State relating to the care and support of the poor and indigent. We are, therefore, of the opinion that the expense of the support of the lunatics named was properly charged to the town of German Flats; and that the case was properly disposed of by the trial judge. The respondent contends that the decision of the trial court can be sustained on other grounds; that the writ of *mandamus* was not the proper remedy, and cites many cases to sustain that contention. Having, however, concluded that the decision of the learned trial judge dismissing the writ on its merits was proper, it becomes unnecessary to examine that, and the other questions raised on the argument.

The judgment herein should be affirmed with costs against the relator and appellant.

HARDIN, P. J., and FOLLETT, J., concurred.

Judgment affirmed with costs against the relator